# Exhibit 2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:

21st CENTURY ONCOLOGY HOLDINGS, INC.,   Chapter 11
*et al.*

                                  Case No. 17-22770 (RDD)

          Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Appearances:

Sullivan & Worcester LLP, by Jeffrey R. Gleit, counsel for the Debtors

Klestadt Winters Jureller Southard & Stevens, LLP, by John E. Jeruller, Jr., and Zumpano
Patricios, P.A., by Leon N. Patricios, counsel for Andrew L. Woods

## MEMORANDUM OF DECISION

Before the Court is the objection, dated June 30, 2018 (the "Claim Objection") under 11

U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 of 21st Century Oncology Holdings, Inc. and its

affiliated reorganized debtors (the "Debtors") to Claim No. 175 (the "Claim") filed on behalf of

Andrew L. Woods ("Woods").  The parties have narrowed their issues to two:  (1) what portions,

if any, of the Claim are subject to the cap set forth in 11 U.S.C. § 502(b)(7), and (2) regardless of

any such cap, are two bonuses under Woods' Amended and Restated Executive Employment

Contract with Radiation Therapy Services Inc., d/b/a 21st Century Oncology ("21C"), dated as of

May 13, 2013, which serves as the basis for the Claim (the "Employment Contract"),[1] mutually

exclusive, or can both bonuses be separately earned?

The Court has considered these issues on uncontested facts.  To the extent factual

disputes are relevant, there has yet to be an evidentiary hearing.

Based on the parties' pleadings, including their submissions after the August 28, 2018

---

[1] A copy of the Employment Contract is attached as Exhibit A to the Claim, which is attached as Exhibit A to the
Claim Objection.

hearing (the "Hearing") and the record of the Hearing, this Memorandum of Decision explains why (1) the remaining portions of the Claim under dispute are indeed capped by 11 U.S.C. § 502(b)(7), with the exception that Woods is entitled to prepetition prejudgment interest on the unpaid uncapped amount of the Claim and perhaps to certain attorneys fees, and (2) the bonus provisions of the Contract are ambiguous, permitting inquiry into parol evidence.

## Jurisdiction

The Court has subject matter jurisdiction over the Claim Objection under 28 U.S.C. § 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference, dated January 31, 2012 (Preska, C.J.), as a core proceeding under 28 U.S.C. § 157(b)(2)(B) that the Court has the power to decide by a final order under Stern v. Marshall, 564 U.S. 462, 496-97 (2011). Such jurisdiction continues after confirmation of the Debtors' chapter 11 plan because the plan and the order confirming the plan reserve the Court's jurisdiction to determine the allowance of claims against the Debtors and the dispute has a close nexus to the plan. Cohen v. CDR Creances, S.A.S. (In re Euro-American Lodging Corp.), 549 Fed. Appx. 52, 54 (2d Cir. 2014); Ace. Am. Ins. Co. v. DPH Hldgs. Corp. (In re DPH Hldgs. Corp.), 448 Fed. Appx. 134, 137 (2d Cir. 2011).

## Facts

The Claim is based on 21C's prepetition termination of the Employment Contract without cause on September 23, 2016 and nonpayment of amounts owing thereunder.[2] Claim ¶ 8. See also Amended Complaint, dated March 9, 2017, a copy of which is attached as Exhibit C to the Claim, filed by Woods against 21C in the U.S. District Court for the Middle District of Florida, 2:16 Civ. 897 at ¶¶ 60-62, 66, 74-94 (the "Complaint").

There is no dispute that Woods was a highly compensated 21C executive whose job included, among other things, lobbying on the Debtors' behalf, a role critical to the Debtors'

---

[2] 21C and the other Debtors commenced these chapter 11 cases on May 25, 2017.

heavily regulated business.  As stated in the rider to the Claim incorporated in ¶ 8 thereof,

Woods asserts an aggregate amount owing of $11,097,245.46 as follows, plus accruing

postpetition pre-judgment interest and postpetition legal fees:

A.  Contractual "severance":  $1,000,000;[3]

B.  All contractual bonus payments, including those that were not payable on the
termination of the Employment Contract except as accelerated thereby:  $9,000,000;

C.  Prejudgment interest under Florida law as of May 25, 2017, 21C's chapter 11 petition
date:  $746,660.96;

D.  Prepetition attorneys fees under Fla. Statute § 448.08 and/or 29 U.S.C. § 1132(g):
$335,584.50; and

E.  Contractual COBRA benefit payment for 12 months:  $15,000.

Woods' right to the unpaid severance, bonus payments, and benefits is governed by

paragraph 3(b) and Art. 5 of the Employment Contract.  Paragraph 3(b), appearing in an article

captioned "Executive Compensation," provides,

> "Performance Incentive and Other Bonuses.  The Executive shall be
> entitled to receive the following incentive bonuses:  (i) Five Million Dollars
> ($5,000,000) from the Company for achievement during the Term of a freeze on
> reductions in Medicare reimbursement to freestanding radiation therapy centers
> except for those reductions negotiated on behalf of the Company; or (ii) Two
> Million Five Hundred Thousand Dollars ($2,500,000) from the Company for
> achievement during the Term of the adoption of a new, multi-bundled payments
> system for freestanding radiation therapy centers, to which the Company elects
> not to participate, (iii) Two Million Five Hundred Thousand Dollars ($2,500,000)
> upon the Company's initial election to participate in any way in the system
> referred to in clause (ii) above, and (iv) other cash bonuses as agreed to in writing
> in the future between the Executive and the Chief Executive Officer with approval
> from the Compensation Committee.  Payments under clauses (i) through (iii)
> above shall be made annually over a five year period, with the first payment
> payable within five (5) business days following the freeze, adoption or election,
> respectively.  Any deferred payments of incentive bonuses shall be immediately
> accelerated and paid in full in the event of (A) the Executive's termination

---

[3] This amount equals Woods' annual "Base Salary."  Employment Contract ¶ 3(a).

3

without Cause, termination by the Executive for Good Reason or as a result of the Executive's death or Disability or (B) upon a 'Change in Control'. . . ."

Article 5 of the Employment Contract, captioned "Payments upon Termination," provides in relevant part,

"(a) <u>Involuntary Termination</u>. If the Executive's employment is terminated by the Company during the Term, the Executive shall be entitled to receive his Base Salary and unreimbursed expenses accrued and unpaid through the date of termination (the "<u>Termination Date</u>"). The Executive shall also receive any nonforfeitable benefits already earned and payable to him under the terms of any deferred compensation, incentive or other benefit plan maintained by the Company, payable in accordance with the terms of the applicable plan. The payments and benefits that the Executive shall be entitled to pursuant to this <u>Section 5(a)</u> are collectively referred to as the Executive's '<u>Accrued Compensation</u>.'

"(b) <u>Severance Payments</u>. If the Executive's employment is terminated (i) by the Company without Cause or (ii) by the Executive for Good Reason, then in addition to payment of the Accrued Compensation and any deferred payments of performance incentive bonuses pursuant to <u>Section 3(b)</u>, the Company shall also be obligated to make a series of monthly payments to the Executive for a period of twenty-four (24) months immediately following the Termination Date so long as the Executive continues to comply with <u>Sections 8</u> and <u>9</u> hereof[4]. . . ."

Paragraphs 5(d) and 5(e) of the Employment Contract provide that if Woods' employment is terminated for Cause or if Woods voluntarily terminates his employment not for Good Reason, he shall be entitled only to the Accrued Compensation. Paragraph 5(f) provides, "In order to receive the severance payments and benefits hereunder (other than the Accrued Compensation), the Executive must execute and not revoke a general release of claims in favor of the Company [in the form attached to the Contract] . . . within 60 days following the Termination Date."

Thus, as provided in Employment Contract ¶ 3(b), Woods shall be entitled to three specifically described incentive bonuses, which shall be payable annually over five years after

---

[4] These provisions require Woods to maintain the confidentiality of confidential 21C information and to refrain from engaging in certain actions, including competing with the 21(C) for twenty-four months.

the applicable triggering event but which shall be accelerated and paid fully upon certain events, including Woods' termination without Cause. The right to such acceleration is confirmed in Employment Contract ¶ 5(b) under the heading "Severance Payments," along with the provision of twenty-four months of separate severance payments equal to Base Salary for each year. Employment Contract ¶¶ 5(d) and (e) make it clear, however, that the incentive bonuses and twenty-four months of severance payments shall not be paid if Woods is terminated for Cause or voluntarily terminates his employment without Good Reason, in contrast with "Accrued Compensation," which shall be paid to him in such circumstances, and under ¶ 5(f) they never will be paid unless he timely signs the release described therein (the "Release"). Paragraph 5(a)'s definition of "Accrued Compensation" encompasses "nonforfeitable benefits already earned *and payable* to [Woods] under the terms of any deferred compensation, incentive or other benefit *plan* maintained by [21C]. . . " (emphasis added). It therefore does not include the specific incentive bonuses set out in paragraph 3(b), which are not part of a 21C compensation, incentive or other benefit plan, and, in any event, would not cover them to the extent that they are not yet payable under the five-year payout terms of paragraph 3(b).

The Claim asserts that all three incentive bonuses in Employment Contract ¶ 3(b)(i)-(iii) were triggered prepetition – on December 28, 2015, in February 2015 and on or about July, 2015, respectively. Complaint ¶¶ 43, 46 and 49, and 52. The Claim seeks only $9 million of such bonuses because 21C made the initial, $1 million payment on the first, $5 million bonus in January 2016. Id. ¶ 55.

In addition to the two issues presently before the Court, the Debtors originally objected to $500,000 of Woods' "severance" claim and raised or reserved the right to raise other defenses to the Claim, including Woods' delay in executing the Release, and counterclaims. They have

5

since waived all such objections, defenses and counterclaims, however, on the conditions that the Court decide the two remaining issues and Woods sign the Release. Hearing Tr. at 24-27; Debtors' Reply Memorandum, dated August 24, 2018, at ¶ 15.[5] Implicitly, this means that the Debtors have conceded that the triggers for the incentive bonuses under Employment Contract ¶ 3(b)(i)-(iii) have occurred.

The Debtors of course continue to contend that the portion of those bonuses that were not due and payable before or on Woods' termination, except by acceleration under Employment Contract ¶¶ 3(b) and 5(b), are subject to the cap on allowance under 11 U.S.C. § 502(b)(7). They also contend that section 502(b)(7) precludes Woods' claims to pre-judgment interest and attorneys fees in their entirety. Nor have they conceded that Woods would be entitled to both of the bonuses described in Employment Contract ¶ 3(b)(ii) and (iii), as opposed to one or the other. Because of these remaining objections, the Debtors contend that the Claim should be reduced and allowed in the amount of $3,515,000, as follows: (a) $1,000,000 of "severance" equal to one year's Base Salary, (b) $1,000,000 of incentive bonus under Employment Contract ¶ 3(b)(i), comprising one year's installment of the remaining four years of such bonus payable post-termination without acceleration, (c) $1,500,000 of incentive bonus under Employment Contract ¶ 3(b)(ii), comprising (i) two payments due and owing pre-terminatino and (ii) one year's installment of the remaining bonus payments payable post-termination without acceleration, and (d) a $15,000 COBRA benefit under Employment Contract ¶ 5(a).

## Discussion

**A.     The § 502(b)(7) Objection.**  Generally speaking, claims in bankruptcy are determined under applicable non-bankruptcy law, here the law of Florida, which governs the Employment

---

[5]  The Debtors now acknowledge that although Employment Contract ¶ 5(b) provided Woods with a right to two years of Base Salary post-termination, the Claim seeks only one year, in the amount of $1 million, in keeping with 11 U.S.C. § 502(b)(7) as discussed below.

Contract,[6] or ERISA to the extent that it is relevant to Woods' benefits claims. The Bankruptcy

Code places its own limits on some types of claims, however, including under 11 U.S.C. §

502(b)(7) with respect to claims by employees for damages resulting from the termination of an

employment contract. In re VeraSun Energy Corp., 467 B.R. 757, 762 (Bankr. D. Del. 2012); In

re Vertis Hldgs., Inc., 2011 Bankr. LEXIS 5057, at *5 (Bankr. S.D.N.Y. Dec. 21, 2011) ("§

502(b)(7) itself does not create any right to damages for a terminated employee; it only limits the

amount the employee would otherwise be entitled to recover under his employment contract

pursuant to applicable state law.").

Section 502(b) of the Bankruptcy Code provides that the Court shall determine and allow

the amount of a claim subject to an objection as of the bankruptcy petition date "except to the

extent that . . .

> (7) if such claim is the claim of an employee for damages resulting from
> the termination of an employment contract, such claim exceeds –
>
> > (A) the compensation provided by such contract, without
> > acceleration, for one year following the earlier of –
> >
> > > (i)      the date of the filing of the petition; or
> > >
> > > (ii)      the date on which the employer directed the employee to
> > > terminate, or such employee terminated, performance under such contract;
> > > plus
> >
> > (B) any unpaid compensation due under such contract, without
> > acceleration, on the earlier of such dates. . . ."

11 U.S.C. § 502(b)(7). Section 502(b)(7)'s claim cap therefore has two requirements: the claim

must be (1) that of an employee and (2) for damages resulting from the termination of an

employment contract. In re Lavelle Aircraft Co., 1996 Bankr. LEXIS 453, at *10 (Bankr. E.D.

Pa. May 2, 1996). Those terms are not defined in the Bankruptcy Code, but their meaning is

---

[6] Employment Contract ¶ 15.

7

clear for present purposes, as the portions of Woods' Claim subject to dispute under section 502(b)(7) are manifestly those of an employee for damages resulting from the termination of his Employment Contract. They did not arise until the Contract's termination.[7] Even Woods' common law claim for prejudgment interest and statutory attorneys fee claims pertaining to such damages also constitute damages resulting from termination of the Employment Contract. As stated in Woods' initial opposition to the Claim Objection, "Pursuant to Florida Law, a litigant is entitled to prejudgment interest on a *contractually due* payment," Andrew L. Woods' Initial Response to Claim Objection ¶ 47 (emphasis added), and "With respect to the claim for reimbursement of attorneys' fees, Woods is entitled to reimbursement for attorneys fees: (i) pursuant to Section 448.08 of the Florida Statutes with respect to the *breach of contract* claim and (ii) pursuant to 29 U.S.C. § 1132(g) on the severance and COBRA benefits claims." Id. ¶ 48 (emphasis added). See also Belson v. Olson Rug Co., 483 B.R. 660, 669 (N.D. Ill. 2012) ("[C]ourts have broadly interpreted section 502(b)(7) of the Code to cap claims arising from the termination of an employment contract, whether the claims are based on contract damages or violations of another act, like the National Labor Relations Act," citing, among other decisions, In re FairPoint Comm'cs., Inc., 445 B.R. 271, 275 (Bankr. S.D.N.Y. 2011).

The parties disagree about how to apply the claim cap as required by subsections (A) and (B) of section 502(b)(7). As relevant here, under those subsections, the Claim shall not be allowed in excess of (A) the compensation provided by the Employment Contract, without acceleration, for one year from the date that the Contact was terminated, plus (B) any unpaid

---

[7] It is well established, and the parties do not dispute, that section 502(b)(7) applies regardless whether the employment contract was terminated, as here, before the commencement of the employer's bankruptcy case or after it. In re Vertis Hldgs., 2011 Bankr. LEXIS 5057, at *5, citing Anthony v. Interform Corp., 96 F.3d 692, 697 (3d Cir. 1996). See also Belson v. Olson Rug. Co., 483 B.R. 660, 668-69 (N.D. Ill. 2012) . Because 21C's termination of the Employment Contract occurred before the chapter 11 petition date, under the plain terms of section 502(b)(7), calculation of the capped claim runs from the Contract's termination, not the later petition date.

compensation due under the Employment Contract, without acceleration, from the termination of the Contract.  11 U.S.C. § 502(b)(7)(A) and (B).

The Debtors point out that the plain terms of the Employment Contract[8] provide that the bonuses are not payable upon their triggering event but, instead, "annually over a five year period, with the first payment payable within five (5) business days following the [trigger event]."  Employment Contract ¶ 3(b).  Woods' right to the full amount of incentive bonus payments is accelerated only upon certain types of Contract termination, id.; see also id. ¶¶ 5(b) and 5(c), but not others, id. ¶¶ 5(d) and 5(e), and, moreover, only if Woods timely executes the Release, id. ¶ 5(f).  Thus, the Debtors argue, under the plain terms of section 502(b)(7), with the exception of bonus installments coming due and payable before or the Employment Contract's termination (without acceleration) and one year's projected payments thereafter, Woods' bonus claim must be disallowed because it is compensation coming due only as a result of acceleration upon Contract termination.[9]

Woods contends, to the contrary, that the full amount of the bonuses were "earned" upon

---

[8] Under Florida Law, which as noted above governs the Employment Contract, the Contract's plain language controls, and the Court may not use extrinsic evidence to interpret it absent facial ambiguity.  Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So. 2d 1000, 1002 (Fla. 2d DCA 1995); see also Allen C. Ewing & Co. v. Freedle, 521 So. 2d 384, 386 (Fla. 1st DCA 1988).  A contract is "ambiguous" only when it is of uncertain meaning, and may be fairly understood in more ways than one.  Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So. 2d 1000, 1002 (Fla. 2d DCA 1995) (citing Friedman v. Virginia Metal Prod. Corp., 56 So. 2d 515, 517 (Fla. 1952)); see also Specialty Rests. Corp. v. City of Miami, 501 So. 2d 101, 103 (Fla. 3d DCA 1987) ("A contract is ambiguous when its language is reasonably susceptible to more than one interpretation, or is subject to conflicting inferences.").

[9] It is worth noting that some courts have limited the amount payable under 11 U.S.C. § 502(b)(7) to one year of only the salary component of severance following contract termination.  See, e.g., In re CPT Corp., 1991 Bankr. LEXIS 1730 (Bankr. D. Minn. Nov. 27, 1991) (disallowing under section 502(b)(7), among other things, claim for a portion of earned incentive bonus that otherwise would have been paid as severance during the twenty-four months post-termination).  However, in keeping with the broader meaning of the term "compensation" used in the statute and the fact that compensation may well include items besides base salary, such as benefits, other courts have included non-salary damages resulting from contract termination within the one-year calculation, In re Interact Med. Techs. Corp., 2003 Bankr. LEXIS 2276, at *21-22 (Bankr. D. Mass. Aug. 4, 2003); see also Irvine-Pacific Commer. Ins. Brokers v. Adams (In re Irvine-Pacific Commer. Ins. Brokers), 228 B.R. 245, (BAP 9th Cir. 1998); In re Mid-American Waste Sys., 274 B.R. 111, 124 (Bankr. D. Del. 2001), and this appears to be the better view.  The Debtors apparently concede the point as to one year's projected post-termination payment of Woods' bonuses under Employment Contract ¶ 3(b)(i)-(ii) being allowed in addition to one year of Base Salary in Employment Contract ¶ 5(b).

their respective triggering events and therefore that his claim for their nonpayment does not result from the subsequent termination of the Employment Contract, upon which his right to their payment was accelerated. He cites in his favor dicta to the effect that "Section 502(b)(7) does not limit a claim for which the employer has received all the consideration for which it has bargained, and all that remains to be done is for the employer to fulfill its obligations of payment." In re CPT Corp., 1991 Bankr. LEXIS 1730, at *11 (Bankr. D. Minn. Nov. 27, 1991); see also In re Lavelle Aircraft Co., 1996 Bankr. LEXIS 453, at *15 (same); Gee & Missler Services, Inc., 62 B.R. 841, 845 (Bankr. E.D. Mich. 1986) (same). This argument, however, assumes a different version of the statute than the actual terms of section 502(b)(7), whose plain language the Court must apply absent an absurd result. Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.") (internal citations and quotations omitted).

Section 502(b)(7) caps "damages resulting from the termination of an employment contract," 11 U.S.C. § 502(b)(7), that is, amounts that would not be owing absent the contract's termination. Moreover, it twice clarifies Congress' focus by addressing accelerated payments: first, it excludes accelerated payments from the damages calculation of the one year cap, 11 U.S.C. § 502(b)(7)(A), and then it includes in the allowed claim, in addition to the capped amount, "unpaid compensation *due* under such contract, *without acceleration*" on the earlier of contract termination and the bankruptcy petition date. 11 U.S.C. § 502(b)(7)(B) (emphasis added). Thus, contrary to the dicta quoted above, the statute requires that the Claim be capped at one year's compensation except to the extent that it was actually owing, without acceleration, by the Employment Contract's termination date. In other words, the fact that a condition to

payment of the incentive bonuses under the Employment Contract had occurred is not enough; the bonuses had to be due in full, without acceleration, for them not to be capped. This was not the case under the plain terms of Employment Contract ¶ 3(b) and Art. 5.[10]

The case law is consistent with this conclusion, including In re CPT Corp., 1991 Bankr. LEXIS 1730, upon whose dicta Woods relies. As noted above in note 9, that case actually disallowed under section 502(b)(7) claims for "earned" incentive bonuses, because those bonuses became payable upon contract termination. Id. at *12-16. The court distinguished Gee & Missler Services, 62 B.R. at 845, the source for its dicta, as well as In re Prospect Hill Resources, Inc., 837 F.2d 453 (11th Cir. 1988), which had similar dicta, on the basis that the claims in those cases were not for damages arising from termination of an employment contract but, instead, for vested pension and retirement benefits. 1991 Bankr. LEXIS 1730, at *12. Vested retirement benefits also were at issue in In re Lavelle Aircraft, 1996 Bankr. LEXIS 453, at *16. The holding of Harrington v. Dornier Aviation (N. Am., Inc.) (In re Dornier Aviation (N. Am., Inc.), 305 B.R. 650 (E.D. Va. 2004), is even worse for Woods, who relies upon its dicta that "the one year cap does not apply to employee claims for earned but unpaid compensation or bonuses . . . as these are claims for 'unpaid compensation due . . . without acceleration." Id. at 654. In Dornier, the court capped a claim for failure to give ninety days notice of termination, even though it was triggered by the giving of shorter notice, because the contract provision had the effect of accelerating payment. Id. at 655. The Dornier court's use of the term "earned but unpaid" therefore should be read as synonymous with "vested," not as referring to bonuses subject to a condition subsequent in order to become payable, such as here by acceleration upon

---

[10] The Employment Contract's distinction between "Accrued Compensation," which is always to be paid upon termination, and payment of accelerated bonuses, which is paid only under certain types of termination, also belies Woods' argument that the future installment payments should be treated as due and owing absent acceleration on termination.

contract termination.[11]

Claimants also made Woods' "already earned" argument in a few other cases pertaining to bonuses, whose treatment of the issue is instructive. Perhaps most aptly, in In re Handy Andy Home Improvement Ctrs., 1997 Bankr. LEXIS 1197 (Bankr. N.D. Ill. July 9, 1997), the claimant had "earned" his incentive bonus in the sense that the triggering event for it had occurred, but it was not payable until a date post-termination. Id., at *11. Nonetheless, the court found the bonus "vested" on a prorated basis for purposes of section 502(b)(7) – but only because Illinois law provided for such vesting. Id. at *12-14 (citing 56 Ill. Admin. Code § 300.500(b), which states: "A former employee shall be entitled to a proportionate share of a bonus earned by length of service, *regardless* of any provisions in the contract or agreement conditioning the payment of the bonus upon employment on a particular date.") (emphasis added). The clear implication is that absent such Illinois law, the bonus would have been subject to section 502(b)(7)'s cap. In contrast with Handy Andy, Woods has cited to no Florida law vesting his unaccrued bonuses on the termination date regardless of their being payable over time (unless accelerated on termination), and we have found none.

Other courts also have addressed the "earned" argument when distinguishing between a right to payment subject to a condition subsequent and amounts due and payable, without acceleration, at the time of contract termination, with only the latter being exempt from section 502(b)(7)'s cap. See, e.g., Newman v. Bank of New England Corp, 187 B.R. 405 (Bankr. D. Mass. 1995), where the court concluded that a "signing bonus" clearly triggered by entry into the employment contract nevertheless was subject to section 507(b)(2) because it was not payable until contract termination. See also In re VeraSun Energy Corp., 467 B.R. 757, in which the

---

[11] The requirement that a payment right "vest" pre-termination for it to be excluded from section 502(b)(7)'s cap is also used in In re Irvine Pacific Commer. Ins., 228 B.R. at 246-47(BAP 9th Cir. 1998), and In re Interact Med. Techs. Corp., 2003 Bankr. LEXIS 2276, at *16 n. 10 (Bankr. D. Mass., Aug. 4, 2003).

court subjected a "stay bonus" to section 507(b)(2)'s cap. The former employees had argued "that because they stayed at [the debtor], worked hard and saw the merger through, they lived up to their end of the bargain [and] their claims are for amounts already earned, services already performed, and consideration already provided." Id. at 766. They did not prevail, however, because the court concluded that their claim was for breach of their employment contract in lieu of severance, located, as in Woods' Employment Contract ¶ 5(b) under the heading "severance," payable, as under the Employment Contract, only under certain circumstances such as termination without cause, and, again as under the Employment Contract, conditioned on the employees' provision of a release, each indicia of a right to future payment arising from and accelerated by termination. Id. at 766-67.

No doubt Woods provided valuable services to the Debtors, but the parties chose that his right to payment under the Employment Contract for certain of those services, covered by the bonus provisions, would be payable over time, with acceleration only upon certain circumstances typical of severance. Given the policy behind section 502(a)(7) to "limit claims for future compensation which would have been earned had the parties continued to perform," In re Lavelle Aircraft, 1996 Bankr. LEXIS, at *14,[12] it is not absurd to apply the statute's plain language to that bargain. Congress did not write the statute to require the court to determine whether the executive was overpaid in comparison to an industry standard or whether the executive was, in fact, feathering his nest, nor did it use the terms "golden parachute" or severance. One can presume it decided to write the cap to capture all employee claims for damages, without acceleration, arising on or after termination in order to ensure that its general purpose not be thwarted by the contract parties' artful drafting or courts' value judgments.

---

[12] See also In re VeraSun Energy, 467 B.R. at 765-66, regarding the policy behind section 502(b)(7) to protect the estate from the burdensome claims of key executive employees who were able to extract high salaries and favorable terms in their employment contracts tied to a right payment upon termination.

13

Accordingly, Woods' claims for his accelerated incentive bonuses under Employment Contract ¶¶ 3(b)(i) and (ii) and 5(b) should be allowed subject to section 502(b)(7)'s cap as asserted by the Debtors. Further, if the Court finds that Woods also has a claim to the incentive bonus under ¶ 3(b)(iii), it, too, should be capped under the Debtors' interpretation of 11 U.S.C. § 502(b)(7).

**(i) § 502(b)(7) as Applied to Prejudgment Interest.** As noted above, the Claim also asserts a statutory right under Florida law to prejudgment interest.

Woods acknowledges that any right to *post*petition prejudgment interest is barred by 11 U.S.C. § 502(b)(2), which disallows claims for interest unmatured on the bankruptcy petition date. No recognized exception to that provision applies here: the Claim is not secured, thus 11 U.S.C. § 506(b) could not apply, and the Debtors were not solvent and their chapter 11 plan therefore did not provide for postpetition interest on allowed unsecured claims. Woods of course also would not have an allowed claim for prejudgment interest on those portions of his Claim that are disallowed.

Unless otherwise barred by the Bankruptcy Code, Woods would have a right to *pre*petition prejudgment interest, however, on the allowed portions of his Claim if such a right existed under applicable non-bankruptcy law. See, e.g., Key Bank, N.A. v. Milham (In re Milham), 141 F.3d 420, 423 (2d Cir. 1998) ("Prepetition interest is generally allowable to the extent and at the rate under applicable nonbankruptcy law, including the law of contracts."). Woods asserts such a right under Florida law, citing Becker Holding Co. v. Becker, 78 F.3d 514, 516 (11th Cir. 1996) ("Florida law has long held that a successful plaintiff must be able to recover the total amount of the pecuniary loss that has been suffered. Thus a successful plaintiff is entitled not only to the amount lost, but also to interest on the amount lost in order to

14

compensate the plaintiff for having been deprived of the use of the principal loss amount"),
which the Debtors do not dispute.  The Debtors contend, however, although with little analysis
and no citation to precedent, that 11 U.S.C. § 502(b)(7) precludes such a claim.  With equally
little analysis and no citation to precedent, Woods disagrees.

The issue apparently has not been decided in the context of section 502(b)(7), but the
statute provides guidance.  Claims for damages for breach of an employment contract are capped
by "the compensation *provided by such contract*, without acceleration, for one year following the
earlier of" the petition date and the contract termination date, plus "any unpaid compensation *due
under such contract*, without acceleration, on the earlier of such dates."  11 U.S.C. § 502(b)(7)
(emphasis added).  The Debtors contend that because Woods' claim to prejudgment interest is
not "provided by" the Employment Contract, but, rather by Florida common law, section
502(b)(7) precludes its allowance.  Woods appears to argue, to the contrary, that *because* his
prejudgment interest claim is not provided by the Employment Contract it is not subject to
disallowance under that section.  As discussed above, however, Woods' argument is too broad:
section 502(b)(7) applies broadly to claims "for damages resulting from the termination of an
employment contract," 11 U.S.C. § 502(b)(7), which includes claims arising under a statute or at
common law.  Belson v. Olson Rug, 483 B.R. at 669-70; In re Fairpoint Comm'cs., 445 B.R.
273-74.

The Debtor's argument as to how section 502(b)(7) applies to Woods' prejudgment
interest claim is too narrow, on the other hand.  Because such interest is not "provided by" the
Employment Contract, the Debtors are correct that it should not be allowed on the capped
portion of the bonus claim, as covered by 11 U.S.C. § 502(b)(7)(A), where the phrase appears.
However, to the extent prejudgment interest would be owed at the applicable prejudgment rate

under Florida law on the amount "due under" the Contract before termination or on termination without acceleration, it would not be damages arising from termination or would be added to the allowed amount under 11 U.S.C. § 502(b)(7)(B), respectively.

Cases decided under the analogous cap on damages for termination of a lease under 11 U.S.C. § 502(b)(6) support this interpretation. Like section 502(b)(7)(B), a landlord's lease termination claim under section 502(b)(6) includes not only the capped amount but also "any unpaid rent *due under such lease*, without acceleration," on the earlier of repossession or surrender of the property (emphasis added), and, like section 502(b)(7), the landlord's claim is capped under section 502(b)(6) only to the extent it is for damages resulting from lease termination, without acceleration. 11 U.S.C. § 502(b)(6). Courts have held that prepetition interest on the accrued pre-termination unaccelerated portion of the landlord's claim, even if such interest accrued post-termination under a statute, should be allowed, whereas such interest on the capped claim should be disallowed, under section 502(b)(6). See, e.g., Lariat Co's v. Wigley (In re Wigley), 533 B.R. 267, 272-74 (BAP 8th Cir. 2015), which held that that prepetition pre- and postjudgment interest on pre-termination unpaid rent, maintenance and late fees were "derivative" of such amounts and therefore allowable, but that such interest on the capped claim was not, as it was not provided by the lease. See also, In re Dronebarger, 2011 Bankr. LEXIS 452, at *17 (Bankr. W.D. Tex. Jan. 31, 2011).

**(ii) § 502(b)(7) as Applied to Attorneys Fees.** Woods' claim to attorneys fees should be viewed in the same way as his prejudgment interest claim, with the exception that there is no provision of the Bankruptcy Code comparable to 11 U.S.C. § 502(b)(2) that disallows all claims for postpetition attorneys fees, Travelers Cas. & Sur. Co. of Am. v. PG&E, 549 U.S. 443, 452-54 (2007), and the Debtors have not argued any "principles of bankruptcy law that might provide an

independent basis for disallowing" Woods' claim for postpetiton attorneys fees, id. at 456, with

the exception of section 502(b)(7).  See also Ogle v. Fid. & Deposit Co., 586 F.3d 143, 148 (2d

Cir. 2009), cert. denied, 2010 U.S. LEXIS 3558 (U.S. Apr. 26, 2010).  Woods' right to attorneys

fees under applicable non-bankruptcy law also is not absolute, unlike his Florida law right to

prejudgment interest.  Florida Statutes § 448.08 provides a non-contractual right to attorneys fees

only to a prevailing party in a wage action:  "The Court may award the prevailing party in an

action for unpaid wages costs of the action and a reasonable attorneys fee."  Fla. Stat. ch. 448.08.

The statute's use of the term "wages" has been held to include a bonus.  Community Design

Corp. v. Antonell, 549 So. 2d 343, 345 (Fla. 3d DCA 1984), which the Debtors do not dispute.

That decision also notes that "a party prevails within the meaning of section 448.08 when there is

an affirmative judgment rendered, even if it is for less than the amount claimed and recovery is

not had on all counts."  Id. at 346.[13]

Here, Woods has not prevailed on his argument that his post-termination bonus claims

are not subject to section 502(b)(7)'s cap, and, as discussed below, the Court cannot decide on

this record whether Employment Contract ¶ 3(b)(ii) and (iii) provide for two mutually exclusive

bonuses or, instead, whether Woods can earn both, as he contends.  The Debtors have not

meaningfully disputed the other elements of Woods' Claim, so there was nothing there for

Woods to prevail on.  Therefore, Woods is not now entitled to allowance of any postpetition

attorneys fees under Florida law, although if he prevails in the dispute over whether the bonuses

in ¶ 3(b)(ii) and (iii) are mutually exclusive, he might be entitled under Florida law to attorneys

---

[13] This Memorandum of Decision focuses on the Florida law basis for Woods' attorneys fee claim because Woods
has not explained how he has a right to attorneys fees under 29 U.S.C. § 1132(g)(1), which provides, in relevant
part, "In an action under this title . . . by a participant [or] beneficiary, the court in its discretion may allow a
reasonable attorney's fee and costs of action to either party," other than, arguably, those incurred in defense of his
$15,000 COBRA benefits claim and, perhaps, his $1 million "severance" claim.  The Debtors, however, have not
disputed either of those claims, with the exception of the brief period during which they asserted the "severance"
claim should be capped at $500,000, not $1,000,000.  To the extent that such fees might be allowable under ERISA,
therefore, they in all likelihood would comprise a minuscule portion of his fee claim.

fees related thereto, unless they are precluded by 11 U.S.C. § 502(b)(7).[14]

The parties make essentially the same arguments under section 502(b)(7) regarding Woods' right to prevailing party attorneys fees as they do with respect to his prejudgment interest claim, and the Court applies the same analysis. As discussed above, Woods' claim to attorneys fees as damages arising from termination of the Employment Contract should be read as "compensation" under 11 U.S.C. § 502(b)(7) for such breach, even if provided for by statute, as discussed above. However, also as discussed above, because such fees are not "provided by the contract," Woods' claimed attorneys fees should be disallowed under the plain terms of section 502(b)(7)(A) to the extent they pertain to compensation that had not accrued without acceleration before termination, that is, the disputed capped portion of the Claim. On the other hand, if Woods prevails on this claim to a third bonus, under Florida Statutes § 448.08 Woods' attorney fee claim should be allowed to the extent incurred litigating that issue as to the non-capped portion of the Claim, as an incident to or derivative of the compensation due under the Employment Contract, without acceleration, on or before the termination date.

This latter conclusion applied in Irvine-Pacific Commer. Ins. Brokers v. Adams (In re Irvine-Pacific Commer. Ins.), 228 B.R. 245, 247-48 (BAP 9th Cir. 1998), where fees spent defending a benefit that was fully vested pre-termination were held not to be covered by the one-year cap in section 502(b)(7) and therefore were allowed, consistent with the Court's view of section 502(b)(7). In re Mid-American Waste Sys., 274 B.R. 111 (Bankr. D. Del. 2001), the court addressed the right to legal fees relating, instead, to a capped claim, holding that that if the entitlement to fees had been agreed by the contract parties, they would be included in the claim, id. at 124, subject to the cap, which is consistent with this Court's view of section 502(b)(7)(A)'s

---

[14] Even then, Woods would have to supplement his Claim with his attorneys' time and expense records to enable the Court to determine their reasonableness.

"provided by such contract" requirement. Although no right to legal fees was asserted other than one based on the parties' contract, the implication of <u>Mid-American Waste</u> decision was that attorneys fees would not be included in the capped portion of the claim if not provided for by the employment contract, which also is consistent with this Court's analysis.

## B. Is Woods Entitled to Two or to Three Incentive Bonuses?

As discussed in note 8 above, Florida follows the plain meaning rule for the interpretation of contracts, with resort to parol evidence to discern the parties' intent permitted only if the contract's terms are reasonably susceptible to more than one interpretation. In determining whether an ambiguity exists, the Court may rely on its own logic when interpreting an ambiguous provision and should favor a rational result. <u>Royal Oak Landing Homeowners Ass'n v. Pelletier</u>, 620 So. 2d 786, 788 (Fla. 4th DCA 1993) ("When construing ambiguous language, courts will approve that construction which comports with logic and reason."). Further, courts are required to read provisions of a contract harmoniously to give effect to all portions thereof. <u>Jones v. Fla. Ins. Guar. Ass'n</u>, 908 So. 2d 435, 456 (Fla. 2005).

The Debtors assert two reasons for Woods' incentive bonuses under Employment Contract ¶ 3(b)(ii) and (iii) to be mutually exclusive. The first, that the bonus in ¶ 3(b)(i) is separated by a semi-colon from the other available bonuses in that paragraph, while the remaining bonuses are separated by commas, is not persuasive. The list of available bonuses following ¶ 3(b)(1) that are separated by commas includes not only the two that the Debtors contend are mutually exclusive but also, in ¶ 3(b)(iv), "other cash bonuses as agreed to in writing in the future between [Woods] and the Chief Executive Officer with approval from the Compensation Committee." Moreover, none of the bonuses listed in ¶ 3(b)(ii) through (iv), are separated by the word "or," and the last item in the list is preceded by the word "and," not "or",

which suggests that each possible bonus is separate, not that they are mutually exclusive.

The Debtors' other argument is more plausible. The only difference between the triggers for the bonuses found in ¶ 3(b)(ii) and (iii) is that in ¶ 3(b)(iii) 21C has *initially elected to participate* in any way in the "new multi-bundled payment system for freestanding radiation therapy centers" whose mere adoption by the government, *without* 21C's election to participate, is the trigger for the bonus in ¶ 3(b)(ii). Thus, if one were to portray the two possible bonuses by a Venn diagram, the latter would be wholly subsumed by the former.

Under Woods' interpretation of ¶ 3(b), 21C could trigger ¶ 3(b)(iii)'s bonus on top of ¶ 3(b)(ii)'s bonus – payable, of course, over five years unless accelerated on Contract termination – by making such an election mere minutes after the payment system's adoption. Indeed, under Woods' interpretation, 21C could initially elect to participate in the government's new payment system, triggering the ¶ 3b(iii) bonus, and then elect not to participate, triggering the ¶ 3(b)(ii) bonus, although 21C's subsequent election not to participate surely would connote a lesser value to 21C from the government's mere adoption of the payment system. Could it really be logical, then, that the two bonuses be separately earned when the former is so easily subsumed by the latter?

The portion of Employment Contract ¶ 3(b) that states how the bonuses are to be paid gives some context, but of only limited utility. It provides that "the first payment [of a bonus is] payable within five (5) business days following *the freeze, adoption or election, respectively*." (emphasis added). A serial comma between "adoption" and "or election" clearly would have helped Woods' interpretation. Its absence is not dispositive for the Debtors' interpretation, however, because a comma's inclusion in such a series is not a strict grammatical requirement. See e.g. Telenor Mobile Commc'ns AS v. Storm LLC, 587 F. Supp. 2d 594, n.11 (S.D.N.Y.

2008), aff'd, 351 F. Appx 467 (2d Cir. 2009).

Given (a) the grammatical structure of ¶ 3(b), (b) the flip side of the Debtors' redundancy argument – that is, that if the argument were true, ¶ 3(b)(iii) could be viewed as surplusage, which Florida law cautions us to avoid – as well as Woods' at least plausible explanation of why the government's mere adoption of a new payment system could benefit 21C even if 21C did not elect to participate in it,[15] the parties' intention regarding whether the two bonuses are mutually exclusive is ambiguous.  Parol evidence therefore is permissible to help establish their intention beyond the Contract's plain meaning, after suitable discovery.

## Conclusion

For the foregoing reasons, the portion of the Claim comprising Woods' accelerated bonuses is capped pursuant to 11 U.S.C. § 502(b)(7) in the way asserted in the Claim Objection, including, if Woods is able to establish his right to a bonus under both ¶ 3(b)(ii) and ¶ 3(b)(iii), as to both such bonuses.

The Claim Objection is also granted (a) pursuant to 11 U.S.C. § 502(b)(2), as to Woods' claim for postpetition prejudgment interest, and (b) pursuant to 11 U.S.C.  § 502(b)(7), as to prejudgment interest on any portion of Woods' claim that is capped, because it is not provided by the Employment Contract.  However, prepetition prejudgment interest at the applicable Florida law rate will be allowed on the non-capped portion of the Claim (that is, the portion of the Claim that was owing before or on termination, without acceleration).

The Court will not allow attorneys fees incurred in connection with any portion of the

---

[15] In his post-Hearing submission, Woods asserts that "the adoption of a multi-bundled payment system by the government provided a stable reimbursement baseline, which was very valuable to the company whose revenues had been based on a volatile and unpredictable set of reimbursement factors. . . .  A company would not elect to participate [immediately] if the company's [current] rate of reimbursement under the Physician Fee Schedule was higher than the baseline reimbursement under the new, multi-bundled payment system," which Woods asserts was the case with 21C.  Andrew L. Woods Further Brief in Opposition, dated September 12, 2018, ¶ 25.

Claim that the Debtors have not disputed.  The Claim Objection also is granted as to Woods'

claim to attorneys fees relating to his capped claim, because they are not provided by the

Employment Contract as required by 11 U.S.C. § 502(b)(7)(A) and, moreover, he is not the

prevailing party on the "cap" issue.  Attorneys fees might be allowed to the extent related to the

portion of Woods' third bonus claim that would not be capped under 11 U.S.C. § 502(b)(7) – that

is, the portion owing, without acceleration, before or on the Employment Contract's termination

date.  However, the Court has not determined the prevailing party on the issue of Woods'

entitlement to a third bonus.  Thus the Court will decide whether Woods has an allowed claim

for such fees after deciding whether the parties intended the bonuses under Employment

Contract ¶ 3(b)(ii) and (iii) to be mutually exclusive.

     The Debtors should submit an order consistent with the foregoing and schedule a pre-trial

conference on the remaining open issue pertaining to the parties' intent with respect to ¶

(3)(b)(ii) and (iii) as well the amount of Woods' remaining attorneys fee claim, relating to such

issue.

Dated: January 11, 2019

White Plains, New York

                /s/ Robert D. Drain
                THE HONORABLE ROBERT D. DRAIN
                UNITED STATES BANKRUPTCY JUDGE