UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
In re:                                          :
                                                :
21st CENTURY ONCOLOGY                           :
   HOLDINGS, INC., *et al*.
                                                :
          Debtors.          :
-----------------------------------------------------x

                  Case No. 1:19-cv-01102-CM
                  (on Appeal From: 17-22770 (RRD))

ANDREW L WOODS,                                 :
                                                :
          Appellant,        :
                                                :
                                                :
                                                :
                                                :
  -against-                                     :
                                                :
21st CENTURY ONCOLOY                            :
HOLDINGS, INC., *et al*.,                        :
                                                :
          Appellee.         :
-----------------------------------------------------x

## REPLY BRIEF OF APPELLANT ANDREW L. WOODS

Respectfully Submitted,

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036
John E. Jureller, Jr.
Tel:   (212) 972-3000
Email: jjureller@klestadt.com

**ZUMPANO PATRICIOS, P.A.**
312 Minorca Avenue
Coral Gables, FL 33134
Leon N. Patricios
Tel:   (305) 444-5565
Email:  lpatricios@zplaw.com

*Counsel for Appellant Andrew L. Woods*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES …………………………………………………………………….iii

ARGUMENT ……………………………………………………………………………..1

I.    SECTION 502(b)(7) DOES NOT CAP WOODS' CLAIM BECAUSE THE INCENTIVE
      BONUSES WERE TRIGGERED BEFORE WOODS' TERMINATION……………….1

      A.  DEBTORS' OWN CONDUCT ESTABLISHES THAT THE TRIGGERING
          EVENT OF THE INCENTIVE BONUSES WAS NOT TERMINATION………1

      B.  THE INCENTIVE BONUSES WERE NOT "ACCELERATED" WITHIN THE
          MEANING OF SECTION 502(b)(7)………………………………………..4

      C.  WOODS DID NOT OWE ADDITIONAL PERFORMANCE AFTER THE
          INCENTIVE BONUSES WERE TRIGGERED AND DEBTORS MADE THE
          FIRST INSTALLMENT PAYMENT……………………………………….7

II.   DISCOVERY IS REQUIRED IN ORDER TO RESOLVE AN AMBIGUITY ARISING
      FROM THE BANKRUPTCY COURT'S RUING, WHICH CREATES A CONFLICT
      WITHIN THE EMPLOYMENT AGREEMENT…………………………………....8

III.  HAVING COMMENCED PRIOR LITIGATION FOR UNPAID WAGES AGAINST
      DEBTORS, WOODS SHOULD BE AWARDED PREPETITION INTEREST AND
      ATTORNEY'S FEES ASSOCIATED WITH THE INCENTIVE BONUSES UNDER
      FLORIDA LAW ………………………………………………………………….8

## TABLE OF AUTHORITIES

**Cases*:*

*In re CPT Corp.*, 1991 Bankr. LEXIS 1730 (Bankr. D. Minn. Nov. 27, 1991).……...…………..1

*Folsom v. Prospect Hill Res., Inc.*
(*In re Prospect Hill Resources, Inc.*), 837 F. 2d 453 (11th Cir. 1988).……………….................3, 4

*Gee & Missler Services, Inc.*, 62 B.R. 841 (Bankr. E.D. Mich 1986).…………………….……4

*Harrington v. Dornier Aviation (N. Am. Inc.)*
*In re Dornier Aviation (N. Am. Inc.)*, 305 B.R. 650 (E.D. Va. 2004).……..………………………1

*In re Lavelle Aircraft Co.*, 1996 Bankr. LEXIS 453 (Bankr. E.D. Pa. May 2, 1996).………….3, 4

*In re Litestream Techs., LLC*, No. 8:04-bk-03721 (KRM), 2006 Bankr. LEXIS 2064
(Bankr. M.D. Fla. Aug. 25, 2006).………………………………………………………………8

*Newman v. Bank of New England Corp*, 187 B.R. 405 (Bankr. D. Mass. 1995).…………...........1

*Securities Investor Protection Corp. v. C.J. Wright & Co.*
*(In re C.J. Wright & Co.)*, 183 B.R. 305 (M.D. Fla. 1995).……………………………………….9

## Other Authorities:

11 U.S.C. § 502(b)(7).…………………………………………………………..2, 4, 5, 6, 8

Fla. Stat. ch. 448.08.……………………………………………………………………8, 9

Appellant Andrew L. Woods ("Woods") hereby submits this brief ("Reply") in reply to Debtors' Appellee Brief and in further support of his Appeal from the Memorandum of Decision (the "Order"), dated January 11, 2019, of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").[1]

## ARGUMENT

### I. Section 502(b)(7) Does Not Cap Woods' Claim Because the Incentive Bonuses Were Triggered Before Woods' Termination

#### A. Debtors' Own Conduct Establishes that the Triggering Event of the Incentive Bonuses was Not Termination

Realizing that the plain language of the Employment Contract[2] does not treat the vested Incentive Bonuses[3] as "severance," Debtors now seek to argue that the Incentive Bonuses "are *substantively* a severance payment or, more to the point, are 'amounts that are accelerated or become due *by virtue of termination*.'" Brief of Appellee Reorganized Debtor 21st Century Oncology Holdings, Inc. (the "Response"), p.20 (emphasis added). This argument has no merit.

It is well established that "severance" is triggered by termination. *See, e.g.*, *In re Dornier Aviation (N. Am. Inc.)*, 305 B.R. 650 (E.D. Va. 2004) (notice compensation provided for in the

---

[1] By Order dated April 1, 2019, the Court consolidated this appeal with the subsequent appeal of the Order dated January 31, 2019 as filed under Case No. 19-cv-01541 for all purposes.

[2] Amended and Restated Executive Employment Agreement [D.E. 1131, Exhibit A] (the "Employment Contract").

[3] Section 3(b) of the Employment Agreement provides that Woods shall be entitled to receive the following three (3) Incentive Bonuses:
   a. a $5,000,000 incentive bonus ". . . for achievement during the Term of a freeze on reductions in Medicare reimbursement to freestanding radiation therapy centers except for those reductions negotiated on behalf of the Company."
   b. a $2,500,000 incentive bonus ". . . for achievement during the Term of adoption of a new, multi-bundled payment system for freestanding radiation therapy centers, to which the Company elects not to participate."
   c. a $2,500,000 incentive bonus ". . . upon the Company's initial election to participate in any way in the [new, multi-bundled payment system] . . . ."
(the "Incentive Bonuses"). *See* Employment Contract, §3(b) [D.E. 1131, Exhibit A].

employment contract was prospective compensation, or severance, triggered upon the employee's termination); *Newman v. Bank of New England Corp*, 187 B.R. 405 (Bankr. D. Mass. 1995) (a signing bonus expressly made payable when the employee was terminated constituted a severance payment, because the bonus was triggered by termination); *In re CPT Corp.*, 1991 Bankr. LEXIS 1730 (Bankr. D. Minn. Nov. 27, 1991) (severance payment provisions "[take] into account the probability of income due to termination").

However, Debtors' previous conduct shows this Court precisely why the Incentive Bonuses are not "damages resulting from the termination of an employment contract," or "severance," and therefore cannot be capped by 11 U.S.C. § 502(b)(7) ("Section 502(b)(7)"). The triggering event of the installment payments under the Incentive Bonuses was Woods' satisfaction of the conditions set forth in Paragraph 3(b) of his Employment contract, *not* Woods' termination. Debtors established this crucial fact by paying Woods a $1,000,000 installment *while he was still employed*. Defendant's Answer and Counterclaim, ¶55; Transcript of Hearing re Debtors' Motion for Objection to Claim(s) Number: 175 filed by Andrew L. Woods (the "Hearing Transcript"), p.8, ¶20 [D.E. 1198]. Because the Incentive Bonuses were triggered before Woods' termination, they cannot be capped by 502(b)(7) as accelerated future benefits.

As detailed in the Brief of Appellant Andrew L. Woods (the "Brief"), in order to earn his three (3) separate Incentive Bonuses, Woods had to successfully lobby on behalf of Debtors.[4] *See* Brief, pp. 2, 5–7. Woods succeeded, to Debtors' enormous financial benefit. *Id.* at pp.5–7. Shortly after Woods met each condition of Paragraph 3(b), Debtors made a $1,000,000 installment

---

[4] Under ¶3(b) of the Employment Contract, Woods was entitled to: (1) a $5,000,000 incentive bonus associated with achieving "a freeze on reductions in Medicare reimbursement . . . " (the "Freeze Bonus"); (2) a $2,500,000 incentive bonus associated with achieving "the adoption of a new, multi-bundled payment system . . . " (the "Payment System Bonus"); and (3) a $2,500,000 incentive bonus associated with "[21C's] initial election to participate . . . " (the "Participation Bonus").

2

payment toward the $5,000,000 Freeze Bonus. Defendant's Answer and Counterclaim, ¶55. Although Debtors initially sought to deny that Woods had triggered the Incentive Bonuses, the Bankruptcy Court found that Debtors had waived this defense.[5]

Debtors themselves affirmed that the Incentive Bonuses were triggered *before* Woods was terminated, by making a $1,000,000 installment while Woods was employed. In so doing, Debtors materially distinguished the vested Incentive Bonuses from any damages "resulting from the termination of an employment contract," or "severance." The Incentive Bonuses are not "severance," and Debtors know it.

Having conceded that the triggering event for the Incentive Bonuses occurred prior to Woods' termination, Debtors are unable to distinguish the authorities cited by Woods. In futile desperation, Debtors' sole maneuver to escape *Prospect Hill* and *Lavelle Aircraft*[6] is to reanimate a defense that they expressly waived in the Bankruptcy Court. Hearing Transcript, p.26, ¶20 [D.E. 1198].

Notwithstanding its waiver of the Release[7] as a defense, Debtors have zero support for the argument that the Incentive Bonuses had not vested, contrary to the benefits in *Prospect Hill* and *Lavelle Aircraft*, solely because Woods "still had to render [the] important consideration [of] sign[ing] the Release . . . ." Response, p.17. This is nonsense. All of the conditions triggering each of the three (3) Incentive Bonuses are contained in Paragraph 3(b) of the Employment Contract, *and there is no mention whatsoever of any release in Paragraph 3(b)*. *See* Employment

---

[5] In a hearing before the Bankruptcy Court on August 28, 2018, Debtors waived multiple defenses, including that Woods had not signed a release following his termination. *See* Hearing Transcript, pp.24–28 [D.E. 1198]. In its Memorandum of Decision, the Bankruptcy Court found that in broadly waiving defenses not at issue in such hearing, "Debtors have conceded that the triggers for the [I]ncentive [B]onuses under the Employment Contract ¶3(b)(i)-(iii) have occurred." Memorandum of Decision, p.6 [D.E. 1291].

[6] *Folsom v. Prospect Hill Res., Inc.* (*In re Prospect Hill Resources, Inc.*), 837 F. 2d 453 (11th Cir. 1988); *In re Lavelle Aircraft Co.*, 1996 Bankr. LEXIS 453 (Bankr. E.D. Pa. May 2, 1996).

[7] Referring to Paragraph 5(f) of the Employment Contract, titled "Release."

Contract, ¶3(b) [D.E. 1131, Exhibit A].  As already discussed, Debtors conceded in the Bankruptcy Court that the triggering events for the Incentive Bonuses had occurred.  *See* Memorandum of Decision, *supra* note 4.  Debtors' improper attempt to retrospectively insert this false—and in any case waived—condition on the Incentive Bonuses does not shelter them from *Prospect Hill* and *Lavelle Aircraft*.

Turning to *Gee & Missler*, Debtors simply do not (and cannot) rebut the main proposition cited by Woods: that 502(b)(7) does not limit a claim where "the employer has received all the consideration for which it has bargained, and all that remains to be done is for the employer to fulfill its obligation of payment."  *Gee & Missler Services, Inc.*, 62 B.R. 841, 845 (Bankr. E.D. Mich 1986); Brief, p. 16; *see generally* Response, pp.11–18.  Debtors' glaring attempt to ignore this holding speaks for itself.

B. The Incentive Bonuses Were Not "Accelerated" Within the Meaning of Section 502(b)(7)

Seeking to disguise the Incentive Bonuses as accelerated "severance," Debtors have conflated "accelerated," as that term appears in the Employment Contract, and "acceleration" within the meaning of Section 502(b)(7).  Response, p.20.  However, because Woods' Claim for the Incentive Bonuses is not a claim for "severance" or "future benefits," Debtors' tactic fails.

Vested benefits, such as Woods' Incentive Bonuses, cannot be capped as accelerated future compensation under Section 502(b)(7).  *See*, *e.g.*, *Prospect Hill*, 837 F.2d 453, 455; *Lavelle Aircraft*, 1996 Bankr. LEXIS 453, at *15–16; *Gee & Missler*, 62 B.R. 841, 845.  The Section 502(b)(7) cap turns on whether an employee's right to a particular benefit vested prior to his or her termination.  *See id.*  So long as a benefit vests before termination, as Woods' Incentive Bonuses did, the date of payment is irrelevant.

An examination of Paragraph 3(b) of the Employment Contract reveals that the parties' use of "accelerated" has nothing to do with the triggering mechanism for the Incentive Bonuses, which is the real thrust of Section 502(b)(7). While potentially misleading in a bankruptcy context, the parties' use of "accelerated" in Paragraph 3(b) merely changes the due date of an already vested payment obligation. There is no mention of unearned, future, or potential income anywhere in Paragraph 3(b). *See* Employment Contract, ¶3(b) [D.E. 1131, Exhibit A]. Under the Employment Contract's plain language, the function of the term "accelerated" is to make an *already earned—* and merely deferred—benefit payable immediately. *Id.* An "acceleration" under the Employment Contract does not alter the amount owed under the Incentive Bonuses, change Woods' performance conditions to earn such amounts, or create any right to future, unearned income in the nature of "severance."

Debtors' improper reliance on a previously waived defense has undercut their own argument on this issue. *See* Response, pp.19–20. Debtors take the position that "the Incentive Bonuses . . . only became due and payable annually over a five year period and were accelerated upon Woods' termination and the execution of the Release (which was never signed)." *Id.*

Despite Debtors' obvious attempt to muddy the waters with a release defense that they expressly waived in open court (discussed in Section I(A) above,) Debtors' self-conflicting position regarding the Release proves that the Incentive Bonuses were not accelerated unpaid compensation. Read disjunctively, Debtors' position indicates that the Incentive Bonuses "became due and payable annually over a five-year period." *Id.* Woods agrees that under certain circumstances, payment of the Incentive Bonuses could be deferred to installments over a five year period, with the first installment due within 5 days of triggering any of the three (3) separate Incentive Bonuses. *See* Employment Contract ¶3b [D.E. 1131, Exhibit A]. However, Debtors

have added, "and were accelerated upon Woods' termination and the execution of the Release (which was never signed)." *Id.*

First, as discussed above, "accelerated" here does not bring the Incentive Bonuses within the Section 502(b)(7) cap because the Incentive Bonuses are not "severance." Second, in any case, Debtors have admitted that the Incentive Bonuses only became "accelerated" *upon the execution of a release **that was never signed**. Id.* Debtors have thereby conceded that the purported condition for "accelerating" the Incentive Bonuses never occurred. Therefore, in Debtors' own words, the Incentive Bonuses fall outside the scope of Section 502(b)(7), regardless of how "accelerated" is interpreted.

Still, even if the Release had been signed, its function would merely be to convert Debtors' *already existing* obligation to make installment payments over a five-year period into an obligation to pay a lump sum immediately. Since, even if believed, the Release at best would have converted one already existing obligation into another, Debtors have failed to demonstrate how the Incentive Bonuses—which Debtors have admitted became payable prior to termination—fall within the scope of Section 502(b)(7).

Debtors' gambit is to hoodwink this Court with distracter buzzwords, such as "accelerated" and "upon termination." "*See generally* Response. However, the Incentive Bonuses *could not* be "accelerated" under Section 502(b)(7) because they had already been earned. Although Debtors' payment obligation had been deferred, Woods' performance was complete and his right to such payment had fully vested. "Earned and deferred" does not equate to "severance" or "future benefit," as Debtors would like it to.

C.  Woods Did Not Owe Additional Performance After the Incentive Bonuses Were Triggered and Debtors Made the First Installment Payment

Debtors have severely mis-portrayed a forfeiture provision as giving birth to some amorphous and protracted performance obligation on Woods' part.  Debtors baselessly allege that "in order to earn the full amount of any Incentive Bonuses, Woods had to continue to work for and provide services to 21C over the five-year period."  Response, p15.  Such an obligation simply does not exist.

Paragraph 3(b) plainly provides, "Payments of the [Incentive Bonuses] above shall be made annually over a five year period."  Additionally, "any deferred payment incentive bonuses shall be immediately accelerated and paid in full upon the event of:

(A) [Woods'] termination without Cause, termination by [Woods] for Good Reason or the result of Woods' death or Disability; or

(B) Upon a 'Change in Control . . . .'"

While Woods *could have* forfeited his vested right to the Incentive Bonuses by being terminated "for cause," or leaving voluntarily without "good reason," under Paragraph 5 (*see* Employment Contract, ¶5 [D.E. 1131, Exhibit A]), Debtors are straining reason by arguing that the potential of forfeiture under this contract somehow creates a continuing obligation for Woods to remain employed, when such language is totally absent from the Employment Contract.

Debtor's vast leap in logic is unfounded.  After triggering the Incentive Bonuses, Woods was entitled to the installment payments whether he remained employed for five years, one year, one month, or even just one day; so long as Woods was not terminated "for cause" and did not voluntarily terminate without "good reason."  Debtors have zero basis for claiming that Woods had to "continue to work for and provide services . . . over a five-year period."  Response, p.15.

II.   **Discovery is Required in Order to Resolve an Ambiguity Arising from the Bankruptcy Court's Ruling, Which Creates a Conflict Within the Employment Agreement**

Debtors have misstated Woods' position regarding the interplay of Paragraph 3(b) and Paragraph 5 of the Employment Contract.  Woods does not "assert that the interaction of Sections 3 and 5 of the Employment Agreement create[] an ambiguity warranting discovery."  Response, p.20.  Rather, Woods position is that although Paragraph 3(b) and Paragraph 5 unambiguously exclude the Incentive Bonuses from "severance," *the Bankruptcy Court's ruling* creates a conflict between such paragraphs, giving rise to an ambiguity that warrants discovery.  Brief, pp.20–21.

III.   **Having Commenced Prior Litigation for Unpaid Wages Against Debtors, Woods Should Be Awarded Prepetition Interest and Attorney's Fees Associated With the Incentive Bonuses Under Florida Law**

Debtors' arguments concerning prepetition interest and attorneys' fees are devoid of merit.  Debtors do not address (much less distinguish) a single authority cited by Woods, instead relying upon *Litestream*[8] to argue that Woods should not receive prepetition interest or attorney's fees because he did not litigate his unpaid wages.  *See* Response, p.21.  However, unlike in *Livestream*, ***here there is pending litigation in federal court that Woods commenced for his unpaid wages***.  *See* May 30, 2017 Order, Case No.: 2:16-cv-00897-JES-MRM [D.E. 51].  Such proceeding has been automatically stayed during the pendency of the bankruptcy proceedings, and such stay was maintained by court order as recently as March, 2019.  *Id.*; March 29, 2019 Order, Case No.: 2:16-cv-00897-JES-MRM [D.E. 55] ("in light of the ongoing proceedings in Bankruptcy Court, and the pending appeal from the Bankruptcy Court, the stay shall remain in place").  Additionally, the

---

[8] Debtors cite *Litestream* for the proposition that "Section 448.08 applies ***only*** to 'litigation for unpaid wages' and not 'proving up' a claim against a bankruptcy estate."  *Id.* (citing *In re Litestream Techs., LLC*, No. 8:04-bk-03721 (KRM), 2006 Bankr. LEXIS 2064, at *18 (Bankr. M.D. Fla. Aug. 25, 2006) (emphasis added).  However, Debtors have misstated the *Litestream* holding.  What *Litestream* actually held is that Florida Statute Section 448.08 did not apply because in that particular bankruptcy case, "there was no litigation for [the] unpaid wages."  *Id.*

Bankruptcy Court ruled that "[p]repetition prejudgment interest at the applicable Florida law rate is allowed on the non-capped portion of the Claim." *See* Order Granting in Part the Reorganized Debtors' Objection to Claim No. 175 Filed on Behalf of Andrew L. Woods (the "Bankruptcy Order"), p. 2, ¶ 8.

Debtors' reliance upon *C.J. Wright* is equally baseless.[9] The Bankruptcy Court explained that Woods could receive attorney's fees associated with uncapped portions of his claim. *See* Memorandum of Decision, pp.16–17 [D.E. 1291] ("Woods' claim to attorneys' fees should be viewed in the same way as his prejudgment interest claim, with the exception that there is no provision of the Bankruptcy Code comparable to 11 U.S.C. § 502(b)(2) that disallows all claims for post-petition attorneys' fees . . . and Debtors have not argued any 'principles of bankruptcy law that might provide an independent basis for disallowing' Woods' claim for post-petition attorneys' fees . . . with the exception of section 502(b)(7)").

Based on the foregoing, this Court must award Woods prepetition interest, and would be soundly within its discretion to award attorney's fees, associated with his uncapped Incentive Bonuses.

WHEREFORE, Appellant Andrew L. Woods respectfully requests that this Court reverse the Order of the Bankruptcy Court and remand with instructions to:

1. Enter a new order overruling Debtors' Claim Objection and allowing Woods' Claim in all respects; or in the alternative, ordering the parties to conduct discovery regarding the interplay between ¶3 and ¶5 of the Employment Contract;

---

[9] Debtors cite *C.J. Wright* to sheepishly argue that Florida Statute Section 448.08 does not apply unless the bankruptcy claimant prevails in the underlying action. Response, p.21 (citing *Securities Investor Protection Corp. v. C.J. Wright & Co. (In re C.J. Wright & Co.)*, 183 B.R. 305, 307 (M.D. Fla. 1995). This argument is flawed because the automatic stay of the underlying litigation in no way bars Woods from "prevailing" in the recovery of his Incentive Bonuses in bankruptcy court.

2.  Awarding Woods prejudgment interest and reasonable attorneys' fees concerning the

    uncapped portions of his Claim at the rates allowed under Florida law; and

3.  Such other and further relief as this Court deems just and proper.

Dated: April 24, 2019                                    Respectfully submitted,

                                                         KLESTADT WINTERS JURELLER
                                                         SOUTHARD & STEVENS, LLP

                                                         By:   */s/John E. Jureller, Jr.*
                                                                John E. Jureller, Jr.
                                                         200 West 41st Street, 17th Floor
                                                         New York, New York 10036
                                                         (212) 972-3000

                                                         ZUMPANO PATRICIOS, P.A.
                                                         312 Minorca Avenue
                                                         Coral Gables, FL 33134
                                                         Telephone: (305) 444-5565
                                                         Leon N. Patricios (Admitted *pro hac vice*)

                                                         *Attorneys for Appellant* **Andrew L. Woods**

## CERTIFICATE OF COMPLIANCE

Pursuant to [Rule 8015(a)(7)] of the Federal Rules of Bankruptcy Procedure, the undersigned counsel hereby certifies that as measured by the word-processing system used to prepare this brief, there are 3,394 words in the Appellant's Reply Brief.

Dated: April 24, 2019

*/s/ John E. Jureller, Jr.*

John E. Jureller, Jr.